21-1787

---

UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

TIMOTHY KING, et al.

Plaintiffs,

and

EMILY NEWMAN

Interested Party - Appellant,

v.

GRETCHEN WHITMER; JOCELYN
BENSON; CITY OF DETROIT, MI,

Defendants - Appellees.

---

On Appeal from the United States District Court

For the Eastern District of Michigan

Case No. 20-cv-13134

---

**BRIEF ON APPEAL OF INTERESTED
PARTY-APPELLANT EMILY NEWMAN**

## CORPORATE DISCLOSURE

Interested Party-Appellant Emily Newman makes the following disclosures:

1.      Is said party a subsidiary or affiliate of a publicly owned corporation?

     No.

2.      Is there a publicly owned corporation, not a party to the appeal, that

has a financial interest in the outcome?

     No.

 /s/ Timothy E. Galligan
Timothy E. Galligan

Dated:  February 22, 2022

# TABLE OF CONTENTS

CORPORATE DISCLOSURE ....................................................................i

TABLE OF CONTENTS ........................................................................ii

INDEX OF AUTHORITIES ....................................................................v

STATEMENT REGARDING ORAL ARGUMENT ....................................1

STATEMENT OF JURISDICTION........................................................2

STATEMENT OF ISSUES ....................................................................3

STATEMENT OF THE CASE................................................................4

    A.    Introduction ......................................................................4

    B.    Procedural History ..........................................................5

    C.    Role of Emily Newman ....................................................6

    D.    Sanction Proceedings ......................................................9

SUMMARY OF ARGUMENT ..............................................................12

ARGUMENT ......................................................................................15

    A.    Standard of Review ........................................................15

    B.    The Trial Court Erred In Sanctioning Newman Under
          Rule 11 Because She Did None of the Presenting Acts
          Required by Rule 11(b) and Was Not Responsible
          under Rule 11(c)(1) ........................................................15

          1.    The Requirement of Presenting under Rule 11(b)
                  Was Not Met ......................................................15

2.     There Was No Evidence to Find Newman
"Responsible" under Rule 11(c)(1) ................................... 18

C.     The Trial Court Abused Its Discretion in Awarding
Sanctions under 28 U.S.C. §1927 ........................................... 24

D.     Sanctions under the Court's Inherent Authority Should
Not Be Awarded Because of the Existence of Rule 11
and Because of the Absence of Any Misconduct ..................... 26

E.     The Trial Court Abused its Discretion By Failing
to Analyze Each Attorney Individually..................................... 31

F.     Any Relief in Favor of the State Defendants Against
Newman Should be Reversed ................................................... 38

G.     The Trial Court Abused its Discretion in The Nature of
Sanctions Assessed.................................................................. 38

H.     The Trial Court Abused its Discretion in The Amount
of Attorney Fees Awarded to the City of Detroit..................... 40

1.     The City of Detroit's Time Entries Are
Unreasonable and Excessive When Compared
with the State Defendants ................................................ 40

2.     The Hours Awarded to the City of Detroit Were
Excessive......................................................................... 41

a.     Preparation for July 12, 2021 Hearing ................. 41

b.     Post-Hearing Supplemental Briefs ....................... 43

I.     Newman Adopts by Reference the Arguments
Made by the Other Attorneys Appealing the Same
Trial Court Rulings.................................................................. 45

CONCLUSION AND RELIEF SOUGHT ....................................................45

CERTIFICATE OF COMPLIANCE WITH RULE 32................................47

CERTIFICATE OF SERVICE .................................................................48

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ...................49

# INDEX OF AUTHORITIES

## Cases

*Animal Welfare Inst. v. Feld Entm't, Inc.*,
    944 F. Supp. 2d 1 (D.D.C. 2013) .................................................. 28

*BDT Prods., Inc. v. Lexmark Intern, Inc.*,
    602 F.3d 742 (6th Cir. 2010) ........................................................30

*Carver v. Bunch*,
    946 F.2d 451, 453 (6th Cir. 1991) ................................................28

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) ........................................................................28

*Cooter & Gell v. Hartmarx Corp.*,
    496 U.S. 384 (1990) ......................................................................15

*Fidelity Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co.*,
    412 F.3d 745 (7th Cir. 2005) ........................................................29

*Fuery v. City of Chicago*,
    900 F.3d 450 (7th Cir. 2018) ........................................................30

*Goodyear Tire & Rubber Co. v. Haeger*,
    137 S. Ct. 1178 (2017) ........................................................... 31, 38

*INVST Fin. Group v. Chem-Nuclear Sys.*,
    815 F.2d 391 (6th Cir. 1987) ........................................................40

*In re Ruben*,
    *825 F.2d 977 (6th Cir. 1987)* .......................................... 31-32, 38

*Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor*,
    875 F.2d 1224 (6th Cir. 1989) ......................................................39

*Kenyon Int'l Emergency Servs. Inc. v. Malcolm*,
    No. 12-20306, 2013 U.S. App. Lexis 9704 (5th Cir. 2013) ........ 29

*Koon v. United States,*
    518 U.S. 81 (1996) ........................................................................17

*Morris v. Wachovia Sec., Inc.*,
    No. 3:02-cv-797, 2007 WL 2126344 (E.D. Va. 2007) .................... 13, 19-22

*Ortiz v. Fibreboard Corp*.,
    527 U.S. 815 (1999) ......................................................................18

*Pavelic & LeFlore v. Marvel Entertainment Group*,
    493 U.S. 120 (1989) ......................................................................16

*Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater,*
    465 F.3d 642 (6th Cir. 2006) ...................................................25, 30

*Ridder v City of Springfield*,
    109 F.3d 288 (6th Cir. 1997) ........................................................25

*Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*,
    88 F.3d 368 (6th Cir. 1996) .........................................................15

*Salkil v. Mount Sterling Tp. Police Dep't,*
    458 F.3d 520 (6th Cir. 2006) .......................................................25

*Sentis Group, Inc. v. Shell Oil Co.*,
    559 F.3d 888 (8th Cir. 2009) ....................................................... 29

*Terry v. Tyson Farms, Inc*.,
    604 F.3d 272 (6th Cir. 2010) .......................................................16

*Tucker v. Williams*,
    682 F.3d 654 (7th Cir. 2012) .......................................................30

*United States v Aleo,*
    681 F.3d 290 (6th Cir. 2012) ....................................................... 27-28, 30

*United States v. One 1987 BMW 325,*
    985 F.2d 655 (1st Cir. 1993) .....................................................28, 29

*United States v. Rogers Cartage Co.*,

794 F.3d 854 (7th Cir. 2015) ........................................................28

*United States v Throckmorton,*
   98 U.S. 61 (1878) ............................................................. 35-36

*Wikol v. Birmingham Pub. Schs. Bd. of Educ.,*
   360 F.3d 604 (6th Cir. 2004) ....................................................15

*Williams v. Adams,*
   660 F.3d 263 (7th Cir. 2011) ....................................................39

*Zaldivar v City of Los Angeles,*
   780 F.2d 823 (9th Cir. 1986) ....................................................18

## Statutes

28 U.S.C. § 1291 ................................................................. 2

28 U.S.C. § 1331 .................................................................2

28 U.S.C. § 1343 ................................................................. 2

28 U.S.C. § 1927 ......................................................... passim

28 U.S.C. § 1983 ............................................................. 2, 5

## Court Rules

Fed. R. Civ. P. 11 .............................................................passim

## Other

Notes of Advisory Committee on Rule 11 - 1993 Amendment .................15, 18, 22

Eastern District of Michigan Local Rule 5.1.1(a) ...................................16

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument in this case will serve the purpose of allowing the Court to focus the parties on issues which may be dispositive and gives counsel the opportunity to address any concerns of the Court before a decision is made. Oral argument is especially warranted in this case given the number of appeals arising out of the same trial court rulings, the facts specific to Appellant Emily Newman, the severity of the sanctions, and the public interest.

## STATEMENT OF JURISDICTION

Plaintiffs initiated this action on November 25, 2020 in the trial court alleging violations of, *inter alia*, 42 U.S.C. §1983. (Complaint, R. 1). The district court had jurisdiction under 28 U.S.C. §1331 and 28 U.S.C. §1343. Plaintiff's claims were voluntarily dismissed on January 14, 2021. (Notices of Voluntary Dismissal, R. 86 - R. 91).

On December 2, 2021, the trial court entered a final judgment that imposed sanctions against Interested Party-Appellant Emily Newman ("Newman"). (Judgment, R. 180). Newman filed a notice of appeal on December 6, 2021. (Notice of Appeal, R. 185). This Court has jurisdiction of this appeal under Federal Rules of Appellate Procedure 3 and 4 and 28 U.S.C. §1291.

## STATEMENT OF ISSUES

1. Did the trial court err in sanctioning Newman under Federal Rule of Civil Procedure 11 even though Emily Newman did not sign, file, submit, or later advocate from an earlier filing to the trial court, and was not responsible for any alleged violation of Rule 11?

2. Did the trial court err in sanctioning Newman under 28 U.S.C. §1927 on the basis that she did not dismiss the Plaintiffs' claims even though Defendants Gretchen Whitmer and Jocelyn Benson who moved for sanctions on this basis did not request sanctions against Newman, Newman was not asked to dismiss any claims by any defendant or intervenor, and she had no ability to do so because she had not filed an appearance in the trial court?

3. Did the trial court err in sanctioning Newman under its inherent authority based on the filing of the Complaint when Rule 11 should be treated as the exclusive remedy for sanctions for pleadings and Newman took no action in the trial court?

4. Did the trial court err in not evaluating the individual conduct of Newman and the other attorneys?

5. Did the trial court err in the amount and type of sanctions?

## STATEMENT OF THE CASE

### A.    Introduction

The trial court sanctioned each of the nine attorneys whose name appeared on any filing for the Plaintiffs.  The sanctions were the same for each attorney: a fee award of $175,250, referral to each attorney's respective state bar for investigation and "possible suspension or disbarment," and 12 hours of mandatory legal education.

As to Appellant-Interested Party Emily Newman, the factual record is undisputed that: (1) she did not sign any document filed in the trial court; (2) she did not file anything in the trial court; (3) she did not draft the Complaint or First Amended Complaint, (4) she did not direct or supervise other attorneys; and (5) she did not communicate with any defendant or intervenor, nor did opposing counsel attempt to communicate with her, for any purpose including when dismissal was sought.  The only reference to Emily Newman in the trial court record, and the only conduct by Newman cited by the trial court to impose sanctions, is that her name appeared under the heading "Of Counsel" on the last page of the Complaint and the First Amended Complaint.

The trial court erred in sanctioning Newman under Rule 11, 28 U.S.C. §1927, and the court's own inherent authority based only on her name appearing on the Complaint and First Amended Complaint.  That fact fell far short of what was

required to invoke any of the authority relied upon by the trial court. The error in large part arose from the trial court's approach of grouping all nine attorneys together and never evaluating the individual conduct of each attorney and what effect, if any, he or she had. The clearest illustration of the trial court's failure to engage in the necessary individual analysis is the fact that the trial court awarded sanctions against Newman on Defendants Gretchen Whitmer and Jocelyn Benson's motion for sanctions even though Whitmer and Benson never moved for sanctions against Newman or otherwise requested sanctions against her. By failing to consider the facts specific to Newman and her involvement, and by erroneously applying Rule 11, 28 U.S.C. §1927, and its own inherent authority, the trial court abused its discretion in imposing sanctions against Newman.

### B.    Procedural History

On November 25, 2020, a Complaint was filed in the trial court to challenge aspects of the 2020 Presidential election in Michigan. (Complaint, R. 1). The Plaintiffs were electoral nominees and chairpersons of county chapters of the Republican Party. (First Amended Complaint, R. 3, Page ID #882-83). The Complaint asserted claims under 42 U.S.C. §1983 and state election law. The named Defendants were Governor Gretchen Whitmer, Jocelyn Benson, and the Michigan Board of State Canvassers.

The City of Detroit, the Democratic National Committee and the Michigan Democratic Party, and citizen Robert Davis moved to intervene on November 27, 2020. (Motions to Intervene, R. 5, 12, 14). The trial court permitted intervention on December 2, 2020. (Opinion and Order Granting Motions to Intervene, R. 28, Page ID #2147).

On November 29, 2020, Plaintiffs filed their First Amended Complaint, asserting claims similar to those in the initial Complaint. (First Amended Complaint, R. 6). On the same day, Plaintiffs filed their Emergency Motion for Declaratory, Emergency, and Permanent Injunctive Relief ("Motion for Injunction") seeking certain relief as to election certification and reporting. (Motion for Injunction, R. 7, Page ID #1847).

Eight days later, on December 7, 2020, the trial court denied the Motion for Injunction in a 36 page Opinion and Order. (Opinion, R. 62). On December 22, 2020, Defendants and the City of Detroit moved to dismiss. (Motions to Dismiss, R. 70 and 73). Before those motions were fully briefed or decided, Plaintiffs filed notices of voluntary dismissal of all claims on January 14, 2021. (Notices of Voluntary Dismissal, R. 86- R. 91).

### C.    Role of Attorney Emily Newman

Newman is an attorney licensed in Virginia. (Opinion, R. 172, Page ID #6999). She did not sign any pleading, brief, or other document that was filed with

6

the trial court, nor did she file or otherwise submit any pleading or other paper to the trial court.  (Transcript, R. 157, Page ID #5505).  (For the absence of filing, see trial court docket entries which note the filer of each document.)  She is not licensed to practice in Michigan and is not admitted to the Eastern District of Michigan bar.  She never communicated by any means with any of the Defendants or Intervenors, or their counsel.  She did not file an appearance in the trial court.  (Transcript, R. 157, Page ID #5505).  Because she had not filed an appearance, Newman was not served with any filings.  Newman estimates that she spent about five hours on this matter.  (Transcript, R. 157, Page ID #5317-5318, 5321, 5506-5507).  None of these facts were ever disputed by any movant or the trial court.

The attorneys who signed the Complaint, First Amended Complaint, and Motion for Injunction were Sidney Powell, Gregory Rohl, and Scott Hagerstrom.  (Complaint, R. 1, Page ID #75; First Amended Complaint, R. 6, Page ID #957, Motion for Injunction, R. 7, Page ID #1847-1848).  The two Complaints and the Motion for Injunction were filed by Gregory Rohl.  (See trial court docket entries for R. 1, 6, 7).  There were no hearings, court conferences, or discovery of any nature so no attorney participated in any of those proceedings.

Newman's name appears only on three filings: the Complaint (R. 1, Page ID #75), the First Amended Complaint (R. 6, Page ID #957), and Plaintiffs' Response to Intervenors' Submission of Supplemental Authority (R. 60, Page ID # 3293).  In

7

each pleading, Newman's name is typed under the heading of "Of Counsel," as shown in the signature page for the First Amended Complaint:

Case 2:20-cv-13134-LVP-RSW   ECF No. 6, PageID.957   Filed 11/29/20   Page 85 of 86

/s/ Sidney Powell*
Sidney Powell PC

Texas Bar No. 16209700

Of Counsel:
Emily P. Newman (Virginia Bar No. 84265)
Julia Z. Haller (D.C. Bar No. 466921)
Brandon Johnson (D.C. Bar No. 491730)

2911 Turtle Creek Blvd, Suite 300
Dallas, Texas 75219

*Application for admission pro hac vice
Forthcoming

L. Lin Wood
GA Bar No. 774588
L. LIN WOOD, P.C.
P.O. Box 52584
Atlanta, GA 30305-0584
Telephone: (404) 891-1402

Howard Kleinhendler
New York Bar No. 2657120
Howard Kleinhendler Esquire
369 Lexington Avenue, 12th Floor
New York, New York 10017
(917) 793-1188
howard@kleinhendler.com

/s/ Scott Hagerstrom
Michigan State Bar No. 57885
222 West Genesee
Lansing, MI 48933
(517) 763-7499
Scotthagerstrom@yahoo.com

/s/ Gregory J. Rohl
Michigan State Bar No. P39185
41850 West 11 Mile Road, Ste 110
Novi, Michigan 48375
(248) 380-9404
gregoryrohl@yahoo.com

86

(First Amended Complaint, R. 6, Page ID #957).  The only other substantive filing by the Plaintiffs was the Motion for Injunction on November 29, 2020.  Newman's name did not appear on that motion.  (Motion for Injunction, R. 7).

At a hearing in the trial court on July 12, 2021, Powell explained to the trial court that "Ms. Newman, Mr. Wood, Mr. Johnson, and local counsel had no role

8

whatsoever in the drafting and content of these complaints.    It was my responsibility and Mr. Kleinhendler, not theirs." (Transcript, R. 157, Page ID #5533, lines 17-22).    Similarly, at the same hearing, counsel for seven of the attorneys, but who did not represent Newman, informed the trial court that Sidney Powell and Howard Kleinhendler drafted the two Complaints and that Newman had no role. (Transcript, R. 157, Page ID #5322-5323, 5347).

### D.    Sanctions Proceedings

On December 22, 2020, the City of Detroit filed its Motion to Dismiss and for Sanctions. (Motion to Dismiss, R. 73). Sanctions were sought only under 28 U.S.C. §1927. (*Id,*, Page ID #3576-3578). On January 5, 2021, the City of Detroit filed its Motion for Sanctions, for Disciplinary Action, for Disbarment Referral and for Referral to State Bar Disciplinary Bodies. (Motion for Sanctions, R. 78). It relied only on Rule 11. The trial court later held that this motion mooted the City of Detroit's motion filed on December 22, 2020 and dismissed the former for that reason.[1] (Opinion and Order, R. 149, Page ID #5266-5268).

Intervenor Robert Davis moved for sanctions on December 22, 2020, on the basis of the court's inherent authority and 28 U.S.C. 1927. (Motion for Sanctions, R. 69). Throughout all trial court proceedings, Intervenor Robert Davis' role was

---

[1] Later, when that ruling was raised in the context of the proceedings to set the amount of attorney fees, the trial court stated that the ruling was "mistaken," (Opinion, R. 179, Page ID #7158), but no order was entered to that effect.

minimal and described by the trial court as doing "more to interfere with than assist," "clogg[ing] the Court's docket," and "add[ing] little to the discussion." (Opinion, R. 172, Page ID #6994).

Defendants Whitmer and Benson[2] filed their Motion for Sanctions under 28 U.S.C. §1927 and the court's inherent authority on January 28, 2021.  (R. 105). This motion sought sanctions against only four attorneys, but not Newman:

> Plaintiffs' counsel, Michigan attorneys Greg Rohl (P39185), Richard Scott Hagerstrom (P57885), and Stefanie Lambert Junttila (P71303), and Texas attorney Sydney Powell (Texas Bar No. 16209700), should be sanctioned under 28 U.S.C. §1927, and an award of attorneys' fees be entered in this matter. Alternatively, or in addition to §1927, this Court should impose sanctions and award fees pursuant to its inherent authority.

(Motion for Sanctions, R. 105, Page ID #4358).  In a supplemental brief to that motion, the State Defendants again acknowledged that, except for the four attorneys identified in this excerpt, they "did not specifically seek sanctions against the other counsel" for the Plaintiffs.  (Supplemental Brief, R. 166, Page ID #6589, n. 1).

On July 12, 2021, the trial court held a remote hearing on Zoom on the motions for sanctions.  Shortly prior to the hearing, Emily Newman retained counsel who filed an appearance on July 8, 2021.  (Appearance, R. 148).  The

---

[2] Defendant Board of State Canvassers did not join in the motion.  (Motion for Sanctions, R. 105, Page ID #4335, n. 1).  References to "State Defendants" are to Defendants Whitmer and Benson only.

hearing lasted almost six hours.  (Opinion, R. 172, Page ID #6902).  It was live streamed on YouTube, and the number of viewers was estimated at times to be about 13,000.[3]

On August 25, 2021, the trial court issued its Opinion and Order imposing sanctions against all nine attorneys whose name appeared on any filing for the Plaintiffs.  (Opinion, R. 172).  The trial court relied on Rule 11 and its inherent authority for its sanctions as to the filing of the Complaint and Amended Complaint.  (*Id.*, Page ID #6942-6991).  It relied on §1927 for the failure of the Plaintiffs to dismiss those claims promptly after the casting of electoral votes on December 14, 2020.  (*Id.*, Page ID #6938-6941).

The sanctions were the same as to all nine attorneys who represented the Plaintiffs: joint and several liability for the fees and costs of the State Defendants and the City of Detroit, 12 hours of continuing legal education, and a referral to all state bars and federal courts to which the nine attorneys were admitted for investigation and possible suspension or disbarment.  (*Id.*, Page ID #6996-6997).

After the August 25, 2021 ruling, the City of Detroit and State Defendants submitted attorney fee detail.  (State Notice, R. 173; Detroit Time and Expense Records, R. 174).  The State sought $21,965 for two attorneys.  (Opinion and

---

[3] AP News, cited in Motion Requesting Public Release of Recording of July 12, 2021, Sanctions Hearing (Motion, R. 152, Page ID #5285).

Order dated December 2, 2021, R. 179, Page ID #7143). The City requested $182,192 for the work of seven attorneys. (*Id*., Page ID #7143-7144).

The trial court entered Judgment on December 2, 2021, ordering that "Plaintiffs' counsel, jointly and severally, shall pay attorney fees in the amount of $21,964.75 to Defendants Gretchen Whitmer and Jocelyn Benson" and $153,285.62 to the City of Detroit. (Judgment, R. 180, Page ID #7169-7170).

## SUMMARY OF ARGUMENT

To fall within Rule 11, an attorney must "present" - as that term is defined in Rule 11(b) - a pleading or other submission to the trial court or be responsible under Rule 11(c)(1) for the violation of Rule 11. As to Newman, the basis of the trial court's decision to sanction her under Rule 11 was two-fold. Both holdings were in error. First, the trial court held that the typed notation of Emily Newman's name on the Complaint and First Amended Complaint constituted an act of "presenting" under Rule 11(b):

> By placing her name on the initial and amended complaints, Newman presented pleadings to the court asserting that Defendants committed constitutional and state law violations.

(Opinion, R. 172, Page ID #6924). Second, the trial court held that the placement of Newman's name on those complaints made her "responsible" under Rule 11(c)(1):

12

> By agreeing to place their names on pleadings and/or motions, counsel are responsible for those submissions and will be held accountable.

(Opinion, R. 172, Page ID #6917).

The trial court erred because Rule 11(b) sets forth, and is limited to, four "presenting" acts: "signing, filing, submitting, or later advocating" a pleading. Newman's actions did not fall into any of them. Having one's name on a pleading without more does not constitute one of those four acts. As to whether Newman was "responsible" under Rule 11(c)(1) for any violation because her name appeared as "of counsel" on the Complaints, the court relied only on *Morris v. Wachovia Sec., Inc.*, No. 3:02-cv-797, 2007 WL 2126344, at *9 (E.D. Va. 2007) (cited at Opinion, R. 172, Page ID #6915-6916). But that case did not hold that an attorney is deemed responsible under Rule 11(c)(1) if her name appears on a pleading; in fact, the court in *Morris* held that an attorney whose name appeared on a pleading as "counsel of record" was *not* responsible for another attorney's violation of Rule 11 in one instance.

The trial court awarded sanctions against Newman under 28 U.S.C. §1927 because Plaintiffs did not dismiss the First Amended Complaint immediately after the electoral votes were cast on December 14, 2020, and instead waited until January 14, 2021 to dismiss. This was error because the primary movant under §1927, the State Defendants, did not seek sanctions against Newman. Moreover,

13

Newman never entered an appearance, signed any pleading, or filed anything in the trial court. As a result, she could not have dismissed any claim and, likely in recognition of that fact, no attorney for any Defendant or Intervenor contacted her to request dismissal.

Finally, it was error for the trial court to award sanctions under its inherent authority for the filing of the Complaint and First Amended Complaint. Rule 11 should be considered the exclusive authority to assess sanctions for objectionable pleadings. Even if not precluded by Rule 11, nothing Newman did constituted the requisite misconduct or bad faith to justify sanctions under a court's inherent authority.

For every authority relied upon by the trial court, the trial court was required to scrutinize the conduct of each individual attorney and assess sanctions only on that basis. Instead, the trial court treated all nine attorneys as a group and then sanctioned them for whatever any other attorney in the group did or said. And given her limited role, the sanctions of $175,250 and state bar referral for possible disbarment were excessive and grossly disproportional to her conduct.

The trial court abused its discretion and should be reversed.

## ARGUMENT

### A.    Standard of Review

A trial court's decision to grant sanctions under Rule 11 is subject to an abuse of discretion standard. *Cooter & Gell v. Hartmarx Corp*., 496 U.S. 384, 400 (1990). The same standard applies to decisions to grant sanctions under §1927 and a district court's inherent authority. *Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 375 (6th Cir. 1996). "A district court abuses its discretion when it relies upon clearly erroneous factual findings, applies the law improperly, or uses an erroneous legal standard." *Wikol v. Birmingham Pub. Schs. Bd. of Educ.*, 360 F.3d 604, 611 (6th Cir. 2004).

### B.    The Trial Court Erred In Sanctioning Newman Under Rule 11 Because She Did None of the Presenting Acts Required by Rule 11(b) and Was Not Responsible under Rule 11(c)(1)

#### 1.    The Requirement of Presenting under Rule 11(b) Was Not Met

Rule 11 only applies to the presenting of pleadings, motions or other papers to the court through four specific acts:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances. . .

See also *Notes of Advisory Committee on Rules - 1993 Amendment* ("The rule applies only to assertions contained in papers filed with or submitted to the court.")

Rule 11 must be interpreted as written and is limited to what is stated in that rule. *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 123 (1989) ("We give the Federal Rules of Civil Procedure their plain meaning… [w]hen we find the terms…unambiguous, judicial inquiry is complete"). This is especially true for the list in Rule 11(b) of what constitutes a presenting act, the existence of which means that "presenting" is limited to those four defined acts. *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 283 (6th Cir. 2010) (relies on interpretation maxim that "the expression of one thing is the exclusion of others" which "justif[ies] the inference that [activities] not mentioned were excluded by deliberate choice, not inadvertence....")

If Newman did not do at least one of the four delineated presenting acts, the trial court erred because she was not subject to sanctions under Rule 11(b). There was nothing in the factual record showing that Newman did *any* of the four presenting acts, nor did the trial court identify anything that suggests otherwise. There is no handwritten signature for her and there is no electronic signature denoted by "/s/" for her to satisfy the requirements for an electronic signature.[4] (Complaint, R. 1, Page ID #75; First Amended Complaint, R. 6, Page ID #957). She also did not sign by filing through an electronic filing account under Fed. R. Civ. P. 5(d)(3)(C). As to whether she filed or submitted anything, there is no

---

[4] See R10 of the Electronic Filing Policies and Procedures which is incorporated into Eastern District of Michigan Local Rule 5.1.1(a).

dispute -- she did neither.  The last possible minimum conduct necessary for application of Rule 11(b) is if an attorney presented a pleading by "later advocating it" to the court.  This requires an attorney to have advocated a position from a pleading or other document already submitted to the court.  Newman did not do anything that could be considered advocating to the trial court from a prior filing.

Despite the clarity of how Rule 11(b) defines "presenting," the trial court, without citing any authority, found that Rule 11 extended to any attorney whose name appears on a pleading:

> By placing her name on the initial and amended complaints, Newman presented pleadings to the Court asserting that Defendants committed constitutional and state law violations.  Newman does not suggest that her name was included without her permission.

(Opinion, R. 135, Page ID #6924).  The trial court made an error of law because "presenting" in Rule 11(b) is limited to signing, filing, submitting or later advocating a previously filed document.  It does not include those attorneys whose names appear on a pleading, but who do not sign, file, submit or later advocate a previously filed document.  By erroneously applying Rule 11(b), and specifically by not limiting "presenting" to what is stated in the rule, the trial court committed an error of law.  This constitutes an abuse of discretion.  *Koon v. United States*, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law.")

17

## 2.    There Was No Evidence to Find Newman "Responsible" under Rule 11(c)(1)

An attorney who does not present a pleading to a court may be in violation of Rule 11 if she was "responsible" for the violation of Rule 11 by someone else:

(c)    Sanctions

(1)    In General.  If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.

(Fed. R. Civ. P. 11(c)(1)).   According to the Advisory Committee Notes, determining whether an attorney is "responsible for the violation" is a question of causation between the non-presenting attorney and the violation: "[t]he revision permits the court to consider whether other attorneys in the firm, co-counsel, other law firms, or that party itself should be held accountable for their part in **causing** a violation."   (Notes of Advisory Committee on Rule 11 - 1993 Amendment). Advisory Committee Notes are frequently used to interpret the FRCP and other court rules.   *Amchem Products, Inc. v Windsor*, 521 U.S. 591, 614 (1997) (Supreme Court relies extensively on Adv. Comm. Notes to interpret FRCP 23). *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833-835 (1999) (same).   *Zaldivar v City of Los Angeles*, 780 F.2d 823, 830 (9th Cir. 1986) (use of Adv. Comm. Notes to interpret Rule 11).

18

The trial court sanctioned Newman under the "responsible" clause of Rule 11(c)(1) because her name appeared on the two Complaints:

> **For purposes of Rule 11, an attorney who is knowingly listed as counsel on a pleading, written motion, or other paper "expressly authorize[d] the signing, filing, submitting or later advocating of the offending paper" and "shares responsibility with the signer, filer, submitter, or advocate."** *Morris v. Wachovia Sec., Inc.*, **No. 3:02cv797, 2007 WL 2126344, at \*9 (E.D. Va. 2007)** (emphasis removed) (quoting Gregory P. Joseph, *Sanctions the Fed. Law of Litig. Abuse*, § 5(E)(1) at 110 (3d ed. 2000)). "The Court need not go through 'mental gymnastics,' as pre-1993 courts sometimes felt compelled to do, *see* Sanctions, § 5(E)(1) at 109, in order [to] hold [the attorney] to account under Rule 11." *Id*.
>
> Notably, because Rule 11 only requires a signature by "at least one attorney," Fed. R. Civ. P. 11(a), documents are frequently presented to federal courts which list several attorneys as counsel but contain the signature of only one. Regardless, as amended in 1993, Rule 11 allows for sanctions "on any attorney . . . that violated the rule *or is responsible for* the violation." Fed. R. Civ. P. 11(c)(1) (emphasis added). Moreover, Michigan Rule of Professional Conduct 8.5(a) reads: "A lawyer not admitted in this jurisdiction *is also subject to the disciplinary authority of this jurisdiction* if the lawyer provides or offers to provide any legal services in this jurisdiction." (emphasis added).
>
> By agreeing to place their names on pleadings and/or motions, counsel are responsible for those submissions and will be held accountable.

(Opinion, R. 172, Page ID #6915-6917). (Emphasis added).

The trial court erroneously interpreted the law. There is no legal authority for the proposition that an attorney whose name appears on a pleading, with or without that person's consent, is deemed responsible under Rule 11(c)(1). The

only case relied upon by the trial court for that conclusion was *Morris v Wachovia Securities, Inc.*, No. 3:02-cv-797, 2007 WL 2126344 (E.D. Va.).  In *Wachovia*, sanctions were sought against attorney Schulman.  He had been "appointed as lead counsel" by the court (*id.* at *1), was at "the helm" on the plaintiffs' side (*id.* at *11), and had the role of "general supervising senior partner" charged with the duties of "overall strategic responsibilities" (*id.* at *2).  Starting with an amended complaint filed three months after the start of the case and continuing with "subsequent pleadings and briefs," Schulman was "listed in typeface as counsel of record" on pleadings and briefs.  *Id.* at *3.

The court in *Wachovia* first found that Schulman could not be found liable for "presenting" under Rule 11(b) because Schulman "did not personally file or submit papers" (*id.* at *7) and "never signed any of the papers, or appeared before the Court during the litigation" (*id.* at *7).  This finding was made despite Schulman's name being listed as counsel of record on the objectionable pleadings. This holding, along with the plain language of Rule 11(b), demonstrates the error in the trial court's finding that the appearance of Newman's name on the two Complaints as "of counsel" means she "presented" those pleadings.  See Opinion, R. 172, Page ID #6924 ("By placing her name on the initial and amended complaints, Newman presented pleadings to the Court….")

20

The court in *Wachovia* then turned to whether Schulman could be found "responsible" under Rule 11(c)(1) for the violations. The trial court cited *Wachovia* for the proposition that "an attorney who is knowingly listed as counsel on a pleading, written motion, or other paper 'expressly authorized the signing, filing, submitting or late advocating the offending paper' and 'shares responsibility with the signer, filer, submitter, or advocate.'" See excerpt above at pp. 18-19. But the *Wachovia* opinion did not state or imply that an attorney whose name is on a pleading is responsible under Rule 11(c)(1) for it. In fact, Schulman was found **not** responsible under Rule 11(c)(1) in *Wachovia* even though his name appeared as "counsel of record" on a summary judgment brief that was found to violate Rule 11 . *Id.* at *11-12. When that brief was filed, Schulman was court-appointed "lead counsel," the sanctioned brief listed him "as counsel of record," and he acted as the "general supervisory senior partner." Despite those facts, the court found him not "responsible" under Rule 11(c)(1) because there was "no indication that Schulman participated in the formation of the argument," and the division of labor with other attorneys was reasonable. *Id.* at *11.

For the other Rule 11 violation, Schulman was found responsible under Rule 11(c)(1) for how claims were pled:

> It is the responsibility of lead counsel in a case who holds the responsibility for overall strategic decisions and overall management of the case, as did Schulman, to assume himself that the basic legal theories upon which a case is to proceed are grounded in fact and

21

> laws.  Here, the record shows that Schulman took no action to that end
> after having been informed by the Rue 11 letter that the "stock loan"
> claim was false.

*Id.* at \*12.  The *Wachovia* court did not rely on the listing of Schulman's name on

the pleading in finding responsibility; it relied on his "responsibility for overall

strategic decisions and overall management of the case."  *Id.*  The record in the trial

court showed that Newman had no such role.

As to what the trial court should have considered, the question of whether an

attorney is "responsible" under Rule 11(c)(1) requires that an attorney had "a part

in causing the violation."  (Notes of Advisory Committee on Rule 11 - 1993

Amendment).  That is perhaps why, at the July 12, 2021 hearing, the trial court

initially had the correct focus:

> My first question to Plaintiffs' counsel is: Who wrote the complaint or
> the amended complaint in this matter?

(Transcript, R. 157, Page ID #5322, lines 13-15).  The answer to the first question

was that Newman was not involved in drafting the Complaints.  See discussion

above at pp. 8-9.  But the trial court completely disregarded that information, never

once mentioning it in the 110 pages of the August 25, 2021 Opinion.  It also never

considered other evidence of responsibility under Rule 11(c)(1), such as whether

Newman was lead counsel, had supervisory responsibility, or could dictate strategy

-- all of which were considered by the *Wachovia* case that the trial court cited.

The error of the trial court is also shown by the fact that the City of Detroit, the only movant under Rule 11, never argued that it was sufficient to sanction Newman under either Rule 11(b) or (c)(1) merely because her name was on the pleadings. And as to the supposed conduct of Newman that warranted sanctions, in four separate briefs[5] and in almost six hours of hearing on July 12, 2021, the City never explained, argued, or speculated what Newman did or did not do to warrant sanctions against her. That omission is especially notable given that, near the end of the July 12 hearing, the trial court stopped counsel for the City of Detroit and asked that he address each attorney's conduct in supplemental briefing instead of at the hearing in his closing remarks. (Transcript, R. 157, Page ID #5523, lines 7-19). Counsel for the City of Detroit responded that "we'll leave that for briefing later." (*Id.*, Page ID #5523-5524, lines 25-2). The promised "later" never came. In the City of Detroit's two supplemental briefs, it never addressed the role of Newman or pointed to any conduct of hers that met Rule 11(b) or (c)(1). (R. 164 and R. 171). That silence demonstrates that there is none.

---

[5] The briefs filed by the City of Detroit for its Rule 11 motion included R. 78 on January 5, 2021, R. 103 on January 26, 2021, R. 164 on July 28, 2021, and R. 171 on August 4, 2021.

### C.    The Trial Court Abused Its Discretion in Awarding Sanctions under 28 U.S.C. §1927

The trial court imposed sanctions under §1927 because Plaintiffs' counsel failed to dismiss immediately after December 14 and instead waited until January 14, 2021:

> This argument misses the crux of opposing counsel's argument for §1927 sanctions, which is that Plaintiffs' counsel multiplied proceedings by failing to dismiss the case when their claims became moot on December 14 (if not earlier) and by pursuing their legal claims even after the Court issued its opinion [on December 7] clearly informing Plaintiffs and their counsel that their legal claims were weak and lacked factual support.

(Opinion, R. 172, Page ID #6938-6939).

The significance of the December 14, 2020 date is that was when "Michigan's electors cast their votes on December 14." (*Id.*, Page ID #6936-6937). At the July 12 hearing, the trial court asked why the matter was not dismissed after December 14, 2020. (Transcript, R. 157, Page ID #5345). Counsel for Howard Kleinhendler and Sidney Powell informed the Court that those two attorneys decided against dismissal based on issues that they believed remain to be litigated and that "Emily Newman didn't have any role" in that decision. (*Id.*, Page ID #5347).

The trial court sanctioned Newman under §1927 for the same reason she was sanctioned under Rule 11, which was that her name appeared as "of counsel" on

the Complaint filed on November 25 and Amended Complaint filed on November

29:

> Although the issue of whether non-signing attorneys can be sanctioned is discussed in this Rule 11 section, the Court concludes for the same reasons that they can be sanctioned under §1927 and the Court's inherent authority, as well. The same is true for Wood, Newman, and Rohl, who are discussed in the next subsections.

(Opinion, R. 172, Page ID #6917 n. 15). The trial court's discussion "in the next

subsections" was the finding that Newman's name was listed on the two

Complaints. (*Id.*, Page ID #6923-6924).

Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct

28 U.S.C. §1927. To be sanctioned under Section 1927, "[t]here must be some

conduct on the part of the subject attorney that trial judges, applying collective

wisdom of their experience on the bench, could agree falls short of the obligations

owed by a member of the bar to the court." *Salkil v. Mount Sterling Twp. Police

Dep't,* 458 F.3d 520, 532 (6th Cir. 2006) (quoting *Ridder v City of Springfield*, 109

F.3d 288, 298 (6th Cir. 1997)). To be sanctionable, the subject conduct must

"cause additional expense to the opposing party." *Red Carpet Studios Div. of

Source Advantage, Ltd. v. Sater,* 465 F.3d 642, 646 (6th Cir. 2006).

25

The only finding made by the trial court as to the involvement of Newman was that her name appeared on the Complaint and Amended Complaint filed on November 25 and 29, 2020.  (Opinion, R. 172, Page ID #6924).  The sanctions under §1927, however, were based on not dismissing the claims promptly after December 14, 2020.  But the activity of Newman cited by the trial court occurred only on November 25 and 29, 2020.  No Defendant or Intervenor communicated with Newman to seek her consent to such a dismissal.  And, had they done so or had Newman wanted to do so on her own, she could not have dismissed the Complaint because she had not filed an appearance, she had not filed or signed any filings, and she had no authority or ability to direct or manage the litigation.  The State Defendants apparently reached this conclusion because it never sought sanctions against Newman on this or any other ground.  Sanctioning Newman in the complete absence of any facts or even logical theory to hold her responsible for the case not being dismissed immediately after December 14 was an abuse of discretion.

> **D.    Sanctions under the Court's Inherent Authority Should Not Be Awarded Because of the Existence of Rule 11 and Because of the Absence of Any Misconduct**

In its Opinion, the trial court relied on its inherent authority to sanction the same nine attorneys for the filing of the Complaint and First Amended Complaint. (Opinion, 172, Page ID #6990-6991).  As to Newman's involvement, the trial court

continued to rely on the appearance of her name on the Complaint and First Amended Complaint to impose sanctions.  (Opinion, R. 172, Page ID #6917 n. 15. #6923-6924).

The trial court erred because it should not have considered its inherent authority for sanctions and instead it should have relied only on Rule 11.  In *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), the Supreme Court cautioned against awarding sanctions under the court's inherent authority if the matter can be addressed under the Federal Rules of Civil Procedure:

> Furthermore, when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.

*Id.* at 50.

In *United States v Aleo*, 681 F.3d 290 (6th Cir. 2012), in discussing whether a lawyer could be sanctioned in a criminal proceeding under a court's inherent authority, Judge Sutton addressed the use of inherent powers in a civil case:

> Had this been a civil case, it would have been an easy case.  A court's use of inherent power to sanction the filing of Mr. Freeman's (allegedly) frivolous motion could not be reconciled with the sanctioning regime already in place under the Federal Rules of Civil Procedure.  In a civil case, a district court faced with sharp elbowed litigation tactics may, indeed must, sanction attorney misconduct under Civil Rule 11. . .   The Rule spells out the procedural prerequisites for imposing a sanction ("notice and a reasonable opportunity to respond"), who may seek sanctions (opposing parties

27

and the court), the types of sanctions available (monetary and nonmonetary) and the purpose and limits of a sanction ("limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated").  Fed. R. Civ. P. 11(c).

\*    \*    \*

**In the face of these carefully delineated regulations, it would be one thing to invoke inherent sanctioning authority to fill a gap in the Civil Rules, such as conduct outside the court's jurisdiction.**  See *Chambers*, 501 U.S. at 36-37, 50-51, 111 S.Ct. 2123 (litigant and his attorney "attempt[ed] to perpetrate a fraud on the court" by undertaking a series of bad-faith transactions to thwart the judicial process before filing lawsuit).  **It would be quite another to invoke that power to ease the burden of satisfying existing Civil Rules — to punish practices exempted by a Rule or that fall short of meeting a Rule's standard for sanctionable conduct.**  See *United States v. One 1987 BMW 325*, 985 F.2d 655, 661 (1st Cir. 1993); *cf. Carver v. Bunch, 946 F.2d 451, 453* (6th Cir. 1991) (local court rules "cannot conflict with the Federal Rules of Civil Procedure, Acts of Congress, and rules of practice and procedure prescribed by the Supreme Court").  **Accordingly, had this been a civil case, a district court could not have used its gap-filling inherent power to sanction Mr. Freeman.  Any effort to sanction the lawyer would have to rise or fall based on the relevant rules and statutes already in place.**

*Id.* at 307-308 (emphasis added).

Many courts have followed the same rationale and refused to impose sanctions under their inherent authority where the alleged misconduct is covered by Federal Rules including Rule 11.  *Animal Welfare Inst. v. Feld Entm't, Inc.*, 944 F. Supp. 2d 1, 18 (D.D.C. 2013) ("The Supreme Court's analysis in *Chambers* 'leads to the conclusion that if statutory or rules-based sanctions powers are entirely adequate, they should be invoked, rather than the inherent power.'");

*Kenyon Int'l Emergency Servs. Inc. v. Malcolm*, No. 12-20306, 2013 U.S. App. LEXIS 9704 (5th Cir. 2013) (the "filing of an 'irrelevantly scurrilous e-mail,' even if sanctionable, was not 'beyond the reach of the Rules.'. . . Rule 11, therefore, provides the only plausible basis for the sanctions."); *United States v. Rogers Cartage Co.*, 794 F.3d 854, 863 (7th Cir. 2015) ("when the court chooses to exercise its inherent power, it should explain 'why Rule 11 was inadequate'…"); *Fidelity Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 752 (7th Cir. 2005) ("when a domain of judicial action is covered by an express rule. . .the judge will rarely have need or justification for invoking his inherent power"); *Sentis Group, Inc. v. Shell Oil Co.*, 559 F.3d 888, 900 (8th Cir. 2009); *United States v. One 1987 BMW 325*, 985 F.2d 655, 661 (1st Cir. 1993) ("When, as in this case, the Civil Rules limit the nature of the sanction that can be imposed, a court may not use its inherent powers to circumvent the Rules' specific provisions.").

The trial court's imposition of sanctions under its inherent authority was for the filing of the Complaint and First Amended Complaint.  Rule 11 specifically addresses sanctions for pleadings.  Promulgated in 1937, and amended five times, Rule 11 provides for a comprehensive framework, with detailed procedural steps and substantive requirements, for imposing sanctions for pleadings.  That rule authority alone should control the extent to which sanctions should be imposed for

pleadings for all the reasons given by Judge Sutton in *Aleo* and in the case law cited above.

Even if the trial court's reliance on inherent authority is considered appropriate, there must be some act of bad faith or misconduct and there was not for Newman. To warrant sanctions on this basis, the attorney must be found to have "willfully abuse[d] judicial processes or who otherwise act in bad faith." *Red Carpet Studios*, 465 F.3d at 646. *See Tucker v. Williams*, 682 F.3d 654, 662 (7th Cir. 2012) ("Without a finding that [defendant] acted in bad faith or engaged in misconduct, the district court sanctioned him, seemingly, in the interest of 'fairness.' This is precisely the sort of sanction that is outside the court's inherent power."). *Fuery v. City of Chicago*, 900 F.3d 450 (7th Cir. 2018) ("part of a court's consideration should be on the impact or effect that the conduct had on the course of the litigation"). The standard for sanctions under this authority is high: the "mere fact that an action is without merit does not amount to bad faith" and a "court must find **something more** than that a party knowingly pursued a meritless claim or action at any stage of the proceedings." *BDT Prods., Inc. v. Lexmark Intern, Inc.*, 602 F.3d 742, 753-754 (6th Cir. 2010) (emphasis in original).

Sanctions under the trial court's inherent authority was assessed based the assertion of the claims in this action in the Complaint and First Amended Complaint. (Opinion, R. 172, Page ID #6991). But Newman did not draft either

Complaint and she did not sign or file either.  There was nothing in the factual record showing that she did anything to advance either pleading or the claims set forth in them.  Beyond her name appearing on those pleadings, the record shows that Newman simply had no control or management over the litigation.  It was an abuse of discretion by the trial court to sanction Newman based on its inherent authority for the extremely limited role by Newman in the trial court.

### E.   The Trial Court Abused its Discretion By Failing to Analyze Each Attorney Individually

Each sanction authority relied upon by the trial court requires an individual analysis of the attorney's conduct and violation.  Rule 11 provides that the award of attorney fees is limited to "the reasonable attorney's fees and other expenses **directly resulting from the violation**."  For §1927, an attorney's liability is intended to be limited to "the excess **costs attributed to his misconduct**."  *In re Ruben*, 825 F.2d 977, 983 (6th Cir. 1987).  Sanctions under the trial court's inherent authority "are limited to the fees the innocent party **incurred solely because of the misconduct….**"  *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1184 (2017).  (Emphasis added throughout this paragraph.)

In *In re Ruben*, 825 F.2d 977 (6th Cir. 1997), the district court sanctioned a number of attorneys under Rule 11, the court's inherent authority, and §1927.  The Sixth Circuit reversed because the trial court erred in not focusing specifically on what each attorney did and the particular impact of their individual actions,

31

remanding so that task could be done with "more exacting scrutiny." *Id.* at 990. "Careful analysis and discrete findings are required, no matter how exasperating the case." *Id.* at 991. The trial court erred in that case because it "did not analyze the impact upon defendants of discrete acts of claimed misconduct" and "the extent to which [attorney] Ruben's misfeasance, if any, caused defendants to incur additional expenses should be explored." *Id.* at 990. That is what happened in the trial court. The trial court repeatedly grouped the attorneys together, held all liable for each other's conduct, and never analyzed their individual conduct and what additional expense that conduct caused, if anything.

The treatment of all attorneys as one began at the start of the July 12, 2021 when the trial court announced that any attorney who did not object to an answer by another attorney was deemed to agree with that answer. (Transcript, R. 157, Page ID #5314, lines 22-25). There was no advance notice of this rule. There was no authority for the ground rule of "if you don't disagree, you are deemed to agree." And it was especially unworkable for nine individuals (and their attorneys) with plainly different levels of involvement and knowledge appearing remotely.

The grouping and treatment of all attorneys as one continued when the trial court simply assumed that all attorneys were the focus of all the motions and overlooked the important fact that the only named Defendants - the Governor and Secretary of State - had not sought sanctions against Newman.

32

In the August 25 Opinion, throughout its 110 pages, the trial court improperly grouped the attorneys, attributing statements and conduct to all of them when a more exacting individualized treatment of the facts was required. The trial court did so by the constant use of "Plaintiffs' attorneys" or Plaintiffs' counsel." A portion of the references to "Plaintiffs' attorneys" includes:

"Plaintiffs' attorneys complain . . ."[6]

"Plaintiffs' attorneys admit to similarly lifting…"[7]

"Plaintiffs' attorneys argue…"[8]

"But when the Court asked Plaintiffs' attorneys… counsel went on about…"[9]

"Plaintiffs' lawyers brazenly assert…"[10]

In other references, the trial court uses "Plaintiffs' counsel" to refer to the group:

"Plaintiffs' counsel responded…"[11]

"During the hearing, Plaintiffs' counsel further asserted..."[12]

"Plaintiffs' counsel appeared to say…" [13]

"Plaintiffs" counsel further emphasized…" [14]

---

[6] Opinion, R. 172, Page ID #6957.

[7] *Id.*, Page ID #6968.

[8] *Id.*, Page ID #6954, 6969, 6970.

[9] *Id.*, Page ID #6948.

[10] *Id.*, Page ID #6989.

[11] *Id.*, Page ID #6958.

[12] *Id.*, Page ID #6962.

[13] *Id.*, Page ID #6964.

[14] *Id.*, Page ID #6965.

"Plaintiffs' counsel conceded…" [15]

"Plaintiffs' counsel attached affidavits…." [16]

"Plaintiffs' counsel dipped and dodged the question…." [17]

Because the trial court used individual names in many instances,[18] and in some instances specified the exclusion of certain attorneys from the reference[19], references to "Plaintiffs' attorneys" and "Plaintiffs' counsel" appears to mean all nine attorneys.  But, there was no basis, factually or legally, to attribute to Newman a single one of the statements described by the trial court as having been made by "Plaintiffs' attorneys" or "Plaintiffs' counsel."  Even if the trial court intended to refer to less than all nine attorneys and not Newman in those references, the August 25 Opinion is inherently vague because it is impossible to determine what attorney is the subject of the trial court's reference.  This error is particularly problematic because the Opinion was sent to the Virginia State Bar for "possible suspension or disbarment" and that entity will be unable to understand from those group references whether they include Newman.

---

[15] *Id.*, Page ID #6967
[16] *Id.*, Page ID #6968
[17] *Id.*, Page ID #6969
[18] For specific references to attorney Kleinhendler in the Opinion, see Page ID #6950, 6986, 6987, 6988, 6989, 6950, 6964, 6968, and 6975.  For Sidney Powell, see Page ID #6978, 6979, 6984, 6988, 6992, and 6997.  For Newman, see Page ID #6902, 6917, 6923, and 6924.
[19] See Opinion, R. 172, Page ID #6902 ("Plaintiffs' attorneys (except Junttila) retained counsel").

34

This approach of treating all nine attorneys as one group continued when the trial court connected statements made by the "Plaintiffs' lawyers" at the July 12, 2021 hearing to what happened at the Capitol on January 6:

> Plaintiffs' lawyers brazenly assert that they "would file the same complaints again." (*Id.* at Pg ID 5534). They make this assertion even after witnessing the events of January 6 and the dangers posed by narratives like the one counsel crafted here. An attorney who willingly continues to assert claims doomed to fail, and which have incited violence before, must be deemed to be acting with an improper motive.

(Opinion, R. 172, Page ID #6989-6990). Newman never made such a statement. Yet, the trial court attributed it to her as part of the group of "Plaintiffs' lawyers" and then linked that statement, which Newman never made, to incitement of violence and the events of January 6.

At the same hearing, the trial court took considerable issue with how "Plaintiffs' counsel pointed" to *United States v Throckmorton,* 98 U.S. 61 (1878) at the July 12 hearing. (Opinion, R. 172, Page ID #6944-6946). The trial court believed that the case was inapplicable, but was particularly troubled by it being cited "on social media by those who question the results of the 2020 presidential election" and, to support that conclusion, quoted verbatim the City of Detroit's brief that described the online citing of this case as the "rantings of conspiracy theorists" and fodder for "social media echo chambers" (*Id.*, Page ID #6945-6946). In a lengthy footnote, the trial court then quoted Twitter posts mentioning

35

*Throckmorton* by the likes of @weather_talk, @marsha250, @frfldres12, and @realindietexan. (Opinion, Page ID #6945). (The tweets are from the City of Detroit's Supplemental Brief at R. 164-8, Page ID #6428-6433). All of this was a gross abuse of discretion because (1) Newman and her attorney never mentioned *Throckmorton* in the trial court, (2) another attorney's citation of it should have no bearing on her, and (3) what @weather_talk or anyone else said on Twitter about *Throckmorton* should not have been considered by the trial court or influenced its decision to sanction Newman.

The trial court also accused "Plaintiffs' counsel" of attacking the court's objectivity and linking that to another attack on democracy:

> Plaintiffs' counsel and their counsel have suggested that this Court's handling of these proceedings and any resultant decision be expected based on the President who appointed the undersigned. This is part of a continuing narrative fostered by Plaintiffs' counsel to undermine the institutions that uphold our democracy.

(*Id.*, Page ID #6893). The trial court does not say when, where, or how that suggestion was made. It certainly was not made by Newman or the attorneys who appeared for her in this action (who are included in trial court's use of "Plaintiffs' counsel and their counsel" in this excerpt). Yet, Newman is charged and impugned with something that she and her attorneys never said, but which was nonetheless attributed to her by the trial court in the Opinion imposing sanctions against her.

The trial court's group characterization continued for conduct occurring after the July 12 hearing as well.  On July 14, 2021, a motion was filed by other attorneys to release the video of the hearing.  (R. 152).  That request was viewed with suspicion by the trial court: it was "curious as to what narrative Plaintiffs' attorneys wished to present through the video's release."  (Opinion,. R. 172, Page ID #6977).  That suspicion then factored into the trial court's belief that the lawsuit itself was in "bad faith" to "frame a 'public narrative,'" which appeared to be another reason to impose sanctions.  (*Id.*, Page ID #6977-6978).  Setting aside the question of whether a request to make public a video of a hearing that had already been live streamed on YouTube and seen by at least 13,000 viewers[20] is evidence of bad faith, it is absolutely clear that Newman and her own attorney never asked for the release of that video, yet the trial court connected this request to a finding of bad faith on the part of all of the attorneys.

And the ultimate group treatment by the trial court is shown in how it sanctioned all nine attorneys.  The trial court made no effort to differentiate among the nine attorneys in the final sanctions award, which was identical in every respect as to each of the nine attorneys despite a factual record showing far different roles and involvement among them.

---

[20] For the viewership estimate, see footnote 3.

Newman was entitled to an individual assessment of her role and whether sanctions were appropriate as to her. The trial court failed to undertake such an analysis, which constituted an abuse of discretion.

## F.   Any Relief in Favor of the State Defendants Against Newman Should be Reversed.

The motion of the State Defendants did not request sanctions against Newman. (Motion for Sanctions, R. 105, Page ID # 4348 and Page ID #4358). See discussion above at p. 10. Yet, the trial court awarded them sanctions against Newman. Whether considered a factual error by being mistaken as to what that motion requested or an error of law for granting sanctions against Newman for the State when they were not requested, it was an abuse of discretion. Therefore, the trial court should be reversed as to holding Newman liable for damages awarded to the State Defendants and for any other relief that is based on that motion.

## G.   The Trial Court Abused its Discretion in The Nature of Sanctions Assessed

An attorney can only be sanctioned for what she caused. See Rule 11(c)(4) (an award of attorney fees is limited to "the reasonable attorney's fees and other expenses directly resulting from the violation."); *In re Ruben*, 825 F.2d 977, 983 (6th Cir. 1987) (under §1927, an attorney's liability is limited to "the excess costs attributed to his misconduct"); *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct.

1178, 1186 (2017) (sanctions under the trial court's inherent authority "are limited to the fees the innocent party incurred solely because of the misconduct…..").

The trial court sanctioned Newman for the filing of the Complaint because her name appeared on it and for not dismissing the Complaint.  But the trial court never explained how Newman's actions caused either event or expense to any party.  To start a lawsuit, a complaint must be drafted, signed, and filed.  Newman did none of those things.  No work or expense resulted from Newman's name being placed on the Complaint.  The trial court also never explained how Newman could have dismissed the case at any point in time given that she had not filed an appearance in the trial court and had no control over the lawsuit.

The trial court was required to impose a sanction that was proportional to the misconduct.  This limit is found in the language of Rule 11, which directs that the sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."  *Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor*, 875 F.2d 1224, 1229 (6th Cir. 1989) ("because deterrence, not compensation, is the principal goal of Rule 11, courts should impose the least severe sanction that is likely to deter").  Moreover, as with any sanction, the punishment must be proportional to the wrong.  *Williams v. Adams*, 660 F.3d 263, 265–266 (7th Cir. 2011) ("Court-ordered punishments (as

distinct from punishments specified in legislation) are required to be proportioned to the wrong.").

The trial court abused its discretion in directing that the August 25, 2020 Opinion be referred to the Virginia State bar for investigation and disciplinary action against Newman including possible suspension or disbarment. The trial court never explained how or why that referral was necessary as to Newman, why lesser sanctions would not be more appropriate given the facts in the record, and what case law favored possible disbarment as a remedy for having one's name on a complaint that others drafted, signed, and filed. The coupling of a less involved role for an attorney and a more severe sanction would be difficult to imagine. The Sixth Circuit has directed that a court is obliged to balance carefully the facts and competing interests in determining the type and severity of sanctions to be imposed. *INVST Fin. Group v. Chem-Nuclear Sys.*, 815 F.2d 391, 404 (6th Cir. 1987). The trial court did not do so, and there is no evidence that the trial court even attempted to perform such an analysis.

## H.    The Trial Court Abused its Discretion in The Amount of Attorney Fees Awarded to the City of Detroit

### 1.    The City of Detroit's Time Entries Are Unreasonable and Excessive When Compared with the State Defendants

Both the City and State Defendants undertook substantially the same work. They opposed the motion for preliminary injunction (R. 5 and R. 31), moved to

dismiss (R. 73 and R. 70), filed motions for sanctions (R. 73 and R. 105), and appeared at the hearing on July 12, 2021.

On September 8, 2021, the State Defendants and the City submitted their time entries to quantify the fee award. (State Defendants' Notice, R. 173; City of Detroit Time Records, R. 174). A comparison of those hours was provided to the trial court. (Newman's Objections, R. 176, Page ID #7115-7116, R 176-2, Page ID #7124). That comparison shows:

| | State Hours | City Hours | City Hours as a Multiple of State Hours |
|---|---|---|---|
| **Trial Court (excl. sanctions)** | 28.55 | 149.25 | 5.2 |
| **Appeal** | 0 | 95 | n/a |
| **Sanctions** | 29.25 | 484.75 | 16.6 |
| **Total** | 57.8 | 729 | 12.6 |

Newman requested that the trial court consider the state's time in assessing the reasonableness of the time claim by the City's attorneys. (Response, R. 176, Page ID #7115-7117). The trial court refused to do so. Its reasoning was that the city's hours should be considered independently and that the State's hours provide no evidence of reasonableness. (Opinion, R. 179, Page ID #7148). This was in error because the State did the same work. The same pleadings and motions were

addressed, drafted, and filed before and during the sanctions proceedings. The same factual and legal issues were faced. The attorneys who represented the state were competent and experienced in this field. Some variance could be expected but not 12 times more hours. To refuse to consider the time of the attorneys for the State Defendants as an indication of reasonableness was an abuse of discretion because it was reliable, accurate, performed by similar attorneys, and for the same work.

### 2.    The Hours Awarded to the City of Detroit Were Excessive

### a.    Preparation for July 12, 2021 Hearing

On June 8, 2021, the trial court issued its notice of hearing for the sanctions motions. (ECF No. 122). The hearing was held on July 12, 2021. From the date of that notice, June 8, through the day before the hearing, July 11, the City claimed, and the trial court awarded, 82.75 hours. (City's Affidavit, R. 174-1 at Page ID #7081-7089). The only substantive activity during that time consisted of preparing for the hearing. In contrast, the State claimed 3.5 hours to prepare for the July 12 hearing.    (State's Submission, R. 173-2 at Page ID #7010). Nonetheless, the trial court awarded the City all of its 82.75 hours because it believed that there was more work to do than to prepare for the hearing:

> The docket reflects, however, that there was more for the City's attorneys to do during this time period than prepare for the hearing. Specifically, two motions were filed and briefed to adjourn the hearing, several attorneys entered their appearances on behalf of

42

Plaintiffs' counsel, the Michigan Senate Oversight Committee issued a 55-page report finding no evidence of widespread or systematic fraud in the election, a motion was filed and briefed regarding the Court taking judicial notice of that report, Plaintiffs' attorneys moved to not appear in person at the hearing, and the Court issued an opinion and order addressing eight motions.

(Opinion, R. 179, Page ID #1759).

Unopposed motions to adjourn the hearing and a single request to appear by counsel at that hearing required little or no time of the City, nor did it require more than 10 minutes to review two appearances of counsel. The trial court denied the City's motion to consider the Michigan Senate Oversight Committee's June 21, 2021 as unnecessary so the City should be not awarded any time for filing a motion seeking unnecessary action, especially when the motion and brief was three pages of text. (Motion, R. 121, Page ID #5069, 5074-5075). The city only claimed 2.5 hours to review the four page "order addressing eight motions," which leaves 72 hours to prepare for a non-evidentiary one day hearing done remotely. The State's attorneys needed 3.5 hours to prepare. (Affidavit, R. 173-2, Page ID #7010). It was an abuse of discretion for the trial court to award any of those 72 hours without examining reasonableness or necessity.

### b.    Post-Hearing Supplemental Briefs

After the July 12 hearing, the City filed two supplemental briefs. (R. 164 and R. 171). From the hearing until the first brief was filed, the City claims 83.75 hours, and 32.75 hours for the second brief. (City's Time Submission, R. 174-1 at

Page ID #7088-7096).  The State, which only filed one supplemental brief on

August 4, incurred 4 hours to draft and file its supplemental brief.  (State's Time

Submission, R. 173-2 at Page ID #7010 and R. 173-3 at Page ID #7016).  Newman

argued to the trial court that the City's claimed time was excessive and

unreasonable and should have been in line with the time of the State's attorneys.

The trial court rejected Newman's argument for the following reasons:

> Nor does the Court find the 114.25 hours billed by the City from the
> date of the hearing to August 4 excessive.  Ms. Newman attributes all
> of these hours to the City's preparation of its supplemental briefs.
> Again, the docket reflects more activity after the hearing than that.
> For example, Plaintiffs' attorney L. Lin Wood had posted a video
> from the hearing on social media in violation of the Court's local
> rules, leading to the filing of an emergency motion (ECF No. 151) and
> a show cause order issued by the Court (ECF No. 156).  Plaintiffs'
> attorneys filed an emergency motion asking the Court to publicly
> release the video. (ECF No. 152.)  Moreover, Plaintiffs' attorneys
> raised many arguments for the first time at the July 12 hearing in
> response to the motions for sanctions, many of which related to the
> City's Rule 11 motion, not the State Defendants' motion.  Additional
> new arguments were made (and even new facts asserted) in Plaintiffs'
> counsel's supplemental briefs.  Counsel for the City reasonably had to
> expend time responding to these new arguments.

This reasoning shows the fundamental error by the trial court throughout the

sanctions proceedings - it never considered the individual actions of the attorneys.

None of what the trial court describes in this excerpt was done by or caused by

Newman.  She did not file the motion to release the video.  No new arguments

were raised by her at the hearing or after the hearing and the trial court points to

none.  If the City had to take the action described in this excerpt, it had nothing to

do with Newman, what she did, or what she argued. To charge such conduct to Newman was an abuse of discretion.

### I.    Newman Adopts by Reference the Arguments Made by the Other Attorneys Appealing the Same Trial Court Rulings

The other eight attorneys sanctioned by the trial court have filed appeals to this Court, which are pending as Case Nos. 21-1785, 21-1786, and 22-1010. Pursuant to Federal Rule of Appellate Procedure 28(i), Newman adopts by reference the arguments made by those Appellants as to why the claims were properly asserted and maintained, including the arguments made in the Corrected Opening Brief of Appellants in Case No. 21-1786 at pp 17-59. (Case No. 21-1786, R. 27).

### CONCLUSION AND RELIEF SOUGHT

Governor Whitmer, Secretary of State Benson, and the City of Detroit either did not want Newman sanctioned or could not explain what Newman did to warrant sanctions. And all the trial court could point to as a reason to sanction Newman is that her name appeared on the Complaint and First Complaint, but not as a signer, filer, drafter, or in any other way that could justify sanctions under applicable law. Yet, the trial court imposed the most punitive sanctions available, consisting of a sizeable monetary award and a bar referral for potential disbarment, among other things. While doing so, the trial court relied on, and ostensibly

blamed, all nine "Plaintiffs' counsel" for the events at the Capitol on January 6, online conspiracy talk on Twitter, and undermining democratic institutions.

When the severity of the sanctions and the trial court's excoriating comments are weighed against the factual record of Newman's non-existent action in the trial court, it appears that the sanctions against Newman were more related to with whom she chose to associate, and on whose behalf the electoral challenges were made, than to her actual conduct before the trial court.  However, under Rule 11, Section 1927, and the court's inherent authority, Newman should have been judged based on her own conduct and should not have been sanctioned. The trial court abused its discretion in doing so.

Appellant Emily Newman requests that the trial court's August 25, 2021 Opinion and Order (R. 172), December 2, 2021 Opinion (R. 179), and December 2, 2021 Judgment (R. 180) be reversed as to her.

TIMOTHY E. GALLIGAN PLLC

By:   /s/ Timothy E. Galligan
      Timothy E. Galligan (P51768)
      39 South Main St., Suite 24
      Clarkston, MI 48346
      (248) 241-6179
      galligan@galliganpllc.com
      Attorney for Appellant -
      Interested Party Emily
      Newman

Dated:  February 22, 2022

## CERTIFICATE OF COMPLIANCE WITH RULE 32

This brief complies with the word type volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,792 words based on the word count of Microsoft Word, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 6 Cir. R. 32(b)(1).

This brief complies with the typeface requirements of Fed. R. App. P. 32(A)(5) and the type style requirements of Fed. R. App. P 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in font Times New Roman, size 14.

/s/ Timothy E. Galligan
Timothy E. Galligan

Dated:  February 22, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2022, I electronically filed Interested Party - Appellant Emily Newman's Brief On Appeal including all attached Certificates and Designations with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

/s/ Timothy E. Galligan
Timothy E. Galligan

Dated:  February 22, 2022

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| Record Entry | Date | Description | Page ID # |
|---|---|---|---|
| 1 | 11/25/2020 | Complaint | 1-75 |
| 6 | 11/29/2020 | First Amended Complaint | 872-957 |
| 7 | 11/29/2020 | Plaintiffs' Emergency Motion for Declaratory, Emergency, and Permanent Injunctive Relief and Memorandum in Support Thereof | 1832-1849 |
| 62 | 12/7/2020 | Opinion and Order Denying Plaintiffs' "Emergency Motion for Declaratory, Emergency, and Permanent Injunctive Relief" | 3295-3330 |
| 69 | 12/22/2020 | Intervenor Defendant Robert Davis' Motion for Sanctions to Be Assessed against Plaintiffs and Plaintiffs' Counsel Pursuant to the Court's Inherent Authority and 28 USC §1927 | 3338-3349 |
| 73 | 12/22/2020 | City of Detroit's Motion to Dismiss and for an Award of Sanctions and supporting brief | 3544-3596 |
| 78 | 1/5/2021 | City of Detroit's Motion for Sanctions, for Disciplinary Action, for Disbarment Referral and for Referral to State Bar Disciplinary Bodies and supporting brief | 3616-3671 |
| 105 | 1/28/2021 | Defendants Whitmer and Benson's Motion for Sanctions under 28 U.S.C. §1927 and supporting brief | 4334-4450 |
| 157 | 7/16/2021 | Transcript for July 12, 2021 Hearing | 5303-5535 |

| 172 | 8/25/2021 | Opinion and Order | 6890-6999 |
|-----|-----------|-------------------|-----------|
| 173 | 9/8/2021 | Defendant Gov. Gretchen Whitmer and Secretary of State Jocelyn Benson's Notice regarding Sanctions Award | 7000-7017 |
| 174 | 9/8/2021 | Intervenor - Defendant City of Detroit's Time and Expense Records | 7018-7097 |
| 176 | 9/22/2021 | Emily Newman's Response and Objections to the State Defendants and Intervenor-Defendant City of Detroit's Time Submissions | 7111-7124 |
| 179 | 12/2/2021 | Opinion and Order | 7142-7168 |
| 180 | 12/2/2021 | Judgment | 7169-7170 |
| 185 | 12/6/2021 | Emily Newman's Notice of Appeal | 7179-7180 |